UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUIS ANGEL ARROYO ACOSTA,
       Plaintiff,
vs.                                                                                     **COMPLAINT**

CITY OF BUFFALO,
CITY OF BUFFALO FORMER POLICE COMMISSIONER ALPHONSO WRIGHT
and CITY OF BUFFALO POLICE OFFICER WILLIAM MILLER
       Defendants.
_____

## Jury Demand

Trial by Jury on all issues is demanded.

## Preliminary Introduction

    This is a civil rights action brought pursuant to 42 U.S.C § 1983 for the violation of Plaintiff's Fourth and Fourteenth Amendment rights of the United States Constitution. The claim arises from a June 28, 2025, incident in which Buffalo Police Officers, acting under color of state law, intentionally and willfully subjected the Plaintiff to the unlawful seizure and deprivation of his property in the form of his beloved companion animal, aka Apollo. To wit: Defendant Buffalo Police Officer William Miller discharged his firearm multiple times in an unjustified and unreasonable manner, thereby shooting and killing Plaintiff Luis Angel Arroyo Acosta's beloved dog, Apollo.

## Parties

    1.    Plaintiff, Luis Angel Arroyo Acosta, resides at all times here relevant in the City of Buffalo, Erie County, and State of New York.

2. Specifically, Plaintiff Luis Angel Arroyo Acosta, heretofore (Plaintiff) resided at 205 Newburgh Avenue, Buffalo, New York 14215, as of June 28, 2025, the date giving rise to the causes of action as set forth in this complaint.

3. Further, Plaintiff and his family dogs, Apollo, a then three (3) year old male extra-large Bully, and his companion, Ivy, a four-year-old American Bully were in the back yard of Plaintiff's above-referenced home on June 28, 2025, the date giving rise to the causes of action as set forth in this complaint.

4. Upon information and belief, the City of Buffalo is a City located in the Western District of New York and is a self-insured entity.

5. Upon information and belief, Defendant Officer William Miller, is employed by the Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

6. Upon information and belief, Defendant former Buffalo Police Commissioner Alphonso Wright, was employed by the Buffalo Police Department as its Police Commissioner and was acting in such capacity during the events that give rise to this lawsuit.

**Jurisdiction**

7. Plaintiff brings this action to recover damages for the violations of his civil rights under the Fourth Amendment of the United States Constitution, codified at 42 U.S.C. § 1983 and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

8. The unreasonable shooting of a companion animal constitutes an unreasonable "seizure," of personal property under the Fourth Amendment. Carroll v. County of Monroe, 712 F.3d 649 (2013).

9. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question) and § 1343 (civil rights).

10. Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

11. Compensatory and Punitive damages are sought pursuant to 42 U.S.C. § 1983, including but not limited to Plaintiff' lost wages, loss of consortium, and the loss of Plaintiff' liberty and freedom pursuant to the illegal and unlawful conduct of the Defendants.

12. Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. Rule 54.

13. As mandated by the Supremacy Clause, in relations to actions brought pursuant to 42 U.S.C. § 1983, Plaintiff does not have to comply with Municipal Law Section 50-e with regard to filing a Notice of Claim with regard to Federal Causes of Action. That being said, Plaintiff did serve a notice of claim on the relevant parties or about August 16, 2025. At least thirty days elapsed since the notice of claim was filed and before this complaint was filed; and in that time, the Defendants have neglected or refused to satisfy the claim." Coggins v. Cty. Of Nassau, 988 F. Supp. 2d 231, 251 (EDNY 2013).

14. At all times here mentioned, Defendants were acting under the color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## Venue

15. This action properly lies in the Western District of New York, pursuant to 28 U.S.C. § 1343(3) because the claims arose in this judicial district and the Defendants reside in and /or do business in Erie County.

## Factual Background

16. On or about June 28, 2025, at approximately 12:51 p.m., Buffalo Police Department officers were conducting a scheduled walking detail on Newburgh Avenue during which they were distributing flyers regarding fireworks. It is unclear why they could not have mailed the same or why this task was considered a proper use of taxpayer dollars or a worthwhile endeavor.

17. Defendant Officer Miller approached the side door of Plaintiff's residence to deliver a flyer. He did not approach or knock on the front door, which was closer to the street and would have required less intrusion onto Plaintiff's property. Despite the absence of any vehicles in the driveway and no indication that anyone was home, Officer Miller repeatedly knocked on the side door.

18. At that time, Plaintiff's dogs, Apollo and Ivy, were in the fenced in backyard. A portion of the fence failed, allowing the dogs to enter the driveway area, which remained part of Plaintiff's property.

19. Upon seeing the dogs, Officer Miller ran away from the dogs and up the front porch of Plaintiff's residence. Such maneuver will always trigger a dog's chase instinct and is in conflict with proper training techniques in terms of interacting with dogs at large who are in pursuit of an individual.

20. Apollo reached the first step. At that moment, Officer Miller discharged his firearm and shot Apollo. Ivy, who was directly behind Apollo at the time of the gunshot, immediately retreated to the backyard. The bullet fired by Officer Miller not only struck Apollo but also endangered Ivy as well as other city residents who were in close proximity to the line of fire.

21. Officer Miller then reported a "shots fired" call to dispatch.

22. Apollo was struck by at least one bullet, causing fatal injury.

23. Apollo was a gentle, good-natured dog known by all who interacted with him as friendly, calm, and loving. Apollo regularly spent time in his fenced backyard and driveway area, where he peacefully coexisted with neighbors, visitors, and delivery personnel. He had been raised around other dogs, including Ivy, as well as adults and children, and had never exhibited any signs of aggression toward people or animals. Friends, neighbors, and visitors consistently described Apollo as social and approachable. Delivery drivers, utility workers, and guests frequently encountered him on Plaintiff's property and uniformly remarked on his friendly disposition. Apollo did not growl, bare his teeth, snap, have his ears pinned back, or show any of the recognized indicators of aggression on this or any other prior interaction.

24. The shot was fired without provocation, without warning, and without any attempt to use less-lethal means.

25.     Officer Hairston was the first additional officer to arrive on scene. Upon observing Apollo deceased, Officer Hairston smiled and laughed and then Miller did the same.

26.     Approximately ten minutes later, a supervising lieutenant, a white female, arrived on scene and likewise smiled and appeared to wink at Defendant Miller. Numerous Officers made jokes or laughed throughout the time they were at Plaintiff's residence and after Apollo had been shot.

27.     Moreover, after Apollo was shot, neither Officer Miller nor any other responding officer made any attempt to render aid, check Apollo's pulse, or otherwise assess his condition. Instead, officers focused on locating the spent shell casing for more than fifteen minutes. Why so much effort was made to locate a spent shell as opposed to render aid to Apollo is unclear.

28.     Failure to provide necessary medical care to an animal in emergent circumstances constitutes a crime under Agricultural and Markets Law (AML) §353. See People v. O'Rourke, 83 Misc. 2d 175, 369 N.Y.S.2d 335 (Crim. Ct. N.Y. Co. 1975).

29.     The unjustifiable pain and suffering inflicted upon Apollo constitute violations of Agricultural and Markets Law §353.

30.     Apollo was on his own property at the time of Defendants' intrusion and presented no threat of any kind. Defendant Officer Miller acted unreasonably from the standpoint of an objectively reasonable police officer.

31.     Plaintiff's interest in being free from such unreasonable seizures and from unreasonable interference with the companionship he had with his dog Apollo outweighs any interests Defendants may claim to justify their interference with Plaintiff's property rights in the ownership of said dog.

32.     Said dehumanization of Plaintiff and the violation and deprivation of Plaintiff' CIVIL RIGHTS as afforded him under both the New York State Constitution and the United States Constitution has caused Plaintiff to suffer severe emotional distress which has manifested itself in depression, crying bouts, loss of appetite, nightmares and loss of sleep. The incident herein described

and the resultant injuries and damages sustained were caused as a result of the negligence, carelessness, reckless disregard and/or unlawful conduct on the part of the agents, servants and/or employees of the Defendants.

**First Cause of Action for violations of the Fourth and Fourteenth Amendment as per 42 U.S.C. § 1983 against for the unlawful damaging and deprivation of Plaintiff's property rights against Defendant Officer William Miller in his individual capacity.**

33. Plaintiff, Luis Angel Arroyo Acosta, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

34. On or about June 28, 2025, Defendant Officer William Miller, while participating in a walking detail on Newburgh Avenue, entered onto Plaintiff's property without consent, without a warrant, and without any legal justification, approaching the side door of Plaintiff's residence rather than the front door facing the street. This unnecessary intrusion brought Officer Miller deeper onto Plaintiff's private property than required for any legitimate purpose and initiated the chain of events that followed.

35. At the time Officer Miller approached Plaintiff's home, Apollo and Ivy, Plaintiff's dogs, were confined within the fenced backyard on Plaintiff's property. After a portion of the fence failed, the dogs entered the driveway area, which also remained wholly within Plaintiff's property. Upon observing the dogs, Officer Miller did not retreat toward the street but instead ran toward the residence and onto Plaintiff's front porch, damaging the porch railing in the process. These sudden movements simply escalated the situation. The dogs briefly retreated and then returned non-aggressively toward the porch. Without justification, Defendant Officer Miller discharged his firearm, striking Apollo. At the time of the shooting, Apollo was not growling, non-threatening, and visibly amicable. He was wagging his tail and approaching in a curious, non-confrontational manner. After being struck, Apollo collapsed at the bottom of the steps, while Ivy immediately retreated to the backyard.

36. Some particulars of said evidence is the fact that:
- Apollo and Ivy showed no aggression toward Defendant Officer Miller at the time of the shooting or at any time prior to the incident.

6

- Apollo and Ivy have never bitten anyone nor shown any aggression towards anyone.
- At the time of the shooting, Apollo was directly in front of Plaintiff's other dog, Ivy, and the discharge of a firearm in that direction not only endangered Ivy's welfare but also posed a significant risk to public safety, as the line of fire was toward the street where pedestrians and moving vehicles could have been present.
- Defendant Officer Miller, nor any other officer that responded to the scene, made any attempt to render aid to Apollo after he was shot.

37. Apollo, as Plaintiff's best friend and companion, constitutes a special classification of property under New York State Law. Defendant Milled gravely injured said companion animal in a matter that shocks the conscience, and in a criminal and unjustified matter. Travis v. Murray, 42 Misc.3d 447 (2013). Plaintiff continues to suffer emotional wounds from the violent and fatal acts inflicted upon Apollo to this day.

38. It is undisputed that, in the Second Circuit, the unreasonable shooting of a companion animal constitutes an unreasonable "seizure," of personal property under the Fourth Amendment. Carroll v. County of Monroe, 712 F.3d 649 (2013).

39. Said above-referenced actions, both individually and in their entirety, fully disregarded the Constitutional rights of the Plaintiff to be free of unlawful and unreasonable seizures of one's property under the Fourth and Fourteenth Amendments of the Constitution.

**Second Cause of Action for Plaintiff Luis Angel Arroyo Acosta for violations of the Fourth and Fourteenth Amendment as per 42 U.S.C § 1983 for municipal liability under the deprivation of one's property rights in the form of the shooting of citizens' dogs is a municipal pattern or practice against the against the City of Buffalo and Police Commissioner Alphonso Wright in their official capacities.**

40. Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

41. Aside from the above-referenced set of facts, the City of Buffalo and its Police Department caused the Plaintiff to be subjected to Fourth Amendment violations because the

Defendant Officer William Miller's violations were part of the customary practices of the City of Buffalo and its police department. Such repeated Fourth & Fourteenth Amendment violations amount to the City of Buffalo's deliberate indifference to an obvious need for training of its officers both in the laws pertaining to unlawful seizures, in the art of de-escalation, and in how to avoid conflict and especially lethal conflict when dealing with canines. This failure of the Department to adequately train, supervise, and regulate their Officers' dealings with canines resulted in Defendant Miller's actions in killing Apollo and thereby causing Plaintiff insufferable and egregious harm, and will result in more unnecessary bloodshed if corrective measures aren't taken by the City of Buffalo the City of Buffalo Police Department.

42. Said Officers receive no training in their interactions with canines. As nearly half of all households own dogs in this country, it is of course readily apparent that the City of Buffalo Police Officers will have frequent interactions with dogs. What is more, the City of Buffalo and former Police Commissioner Alphonso Wright eschewed such training despite the obvious need and benefit of such training.

43. Training is readily available to teach law enforcement officers the basics of canine behavior and body language, threat assessments of encounters involving dogs, alternatives to lethal force, making the decision to use lethal force, and how to deal with the aftereffects of that decision, with an end-goal of being able to instruct other law enforcement officers on those key concepts. Such training is endorsed, sponsored and practiced by such entities as the United States Department of Justice, the National Association of Sheriffs, The International Association of Chiefs of Police, and the Los Angeles Police Department. Despite, such training being readily available and extremely affordable and/or free of charge, the City of Buffalo and its police department, previously led by former Commissioner Alphonso Wright forego such training. Such inaction constitutes deliberate indifference to the rights of citizens to be free of the unlawful shootings of their dogs by police officers. Such training is as economical as it is effective, thereby leaving no reason for the City and former Commissioner Wright to avail itself of such training.

44. Furthermore, the City of Buffalo, its Police Department, and Commissioner Alphonso Wright tacitly condone the practice of lethal means used as a first resort against dogs, otherwise known as puppycide, a disturbing American inner city phenomenon, by only performing a

superficial, biased, and artificial review of the dogs killed by its Police Department which always results in the erroneous and contrived finding that the discharge of the weapon by the Officer, which results in the killing of the dog, is justified by the officer.

45. In this instance, the Department superficially reviewed Officer Miller's slaying of Apollo and made a determination that Officer Miller acted appropriately.

46. To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) (quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 13-14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); Carter v. Inc. Vill. of Ocean Beach, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions).). Relating to widespread and pervasive practices and using logical inferences to impute knowledge onto policymakers, circumstantial evidence can be sufficient to support an inference that . . . a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

47. In this instance, the following constitutes the pattern or practice of the City of Buffalo Police Department and the City of Buffalo:

> a. That Defendant Officer Miller shot and killed Apollo, the canine in question, as the dog approached said Defendant in a curious and non-confrontational manner. The City of Buffalo Police Department has wrongfully

shot numerous dogs through the years, through the deliberate indifference to the dogs' owner's Fourth Amendment rights to be free from unlawful seizures of such property. Such indifference to this particular right, and civil rights in general, is perpetuated by the City of Buffalo Police Department's policymakers including but not limited to the former Commissioner of the City of Buffalo Police Department, Alphonso Wright.

  b. The City of Buffalo has denied, without reason, Freedom of Information Law request seeking records of recent firearm discharges. As a result, the matters referenced are based on dated information and will be updated once such documentation is received in discovery.

  c. However, one representative example of police shooting a dog due to the lack of proper training in interactions with canines took place on October 31, 2014, at a residence on Poultney Street, Buffalo, New York. On that morning, seven Buffalo Police SWAT officers executed a search warrant based solely on hearsay, entering the apartment with guns drawn and faces covered. "Coco", a docile two-year-old pit bull mix, was cowering quietly in the living room. Despite the dog presenting no threat, former Police Detective Brandon Kiefer aimed his firearm and shot Coco twice." Coco was ten feet away and had not moved or shown aggression. The shooting was entirely unnecessary and reflected Detective Kiefer's lack of training in reading canine behavior and de-escalating encounters with animals. The officers then attempted to seize and destroy Coco's body, further demonstrating the City's deliberate indifference to the rights of residents to be free from unlawful shootings of their companion animals.

  d. Another representative example of the same phenomenon took place on November 6, 2014, at a residence on Rickert Street, Buffalo, New York. On that evening, Buffalo Police officers arrived to serve paperwork on one Brandon Barker. As Amanda Hebblewaite answered the door, her two-year-old mixed breed chocolate and brindle colored dog, "Louie", ran outside and sat calmly at the bottom of the stairwell in a peaceful, non-threatening manner. Without

justification, officer Long fired upon Louie despite the dog posing no risk to the armed and armored officers. Louie was then unlawfully deprived of immediate medical care, which resulted in the amputation of his leg and permanently disabled the previously healthy canine. The shooting and subsequent denial of medical treatment were wholly unnecessary and directly attributable to the City's failure to provide officers with any meaningful training in canine behavior or de-escalation techniques. This incident reflects a broader municipal practice of deeming the shooting of non-threatening companion animals justified as a matter of course, without meaningful review or accountability.

  e. An additional incident illustrating the City of Buffalo's failure to train officers in appropriate and humane interactions with canines occurred on March 21, 2015, at a residence on Ideal Street, Buffalo, New York. On that morning, Lieutenant O'Brien executed a search warrant largely alone, in clear deviation from standard Buffalo Police Department protocols, entering the home with a shotgun drawn. Three dogs – a four-year-old coonhound named "Charlie", a thirteen-year-old golden lab, and a fourteen-year-old boxer – were lying peacefully in the living room when Charlie calmly approached the commotion. Without provocation, O'Brien fired at Charlie, missing initially, but ultimately shooting and killing the dog as it attempted to flee. He then discharged additional rounds at the two elderly dogs, terrorizing them and causing significant damage to the home, all while standing directly over the residents. This shooting was entirely unnecessary, reflecting a complete lack of training in reading canine behavior or using non-lethal force, and demonstrates the City's deliberate indifference to the safety of both residents and their companion animals.

  f. Such repeat Fourth Amendment violations amount to the City of Buffalo's deliberate indifference to an obvious need for training of its officers both in the laws pertaining to unlawful seizures of one's animals, in the art of de-escalation, and in how to avoid conflict and especially lethal conflict when dealing with canines. This failure of the Department to adequately train,

11

supervise, and regulate their Officers' dealings with canines resulted in Defendant Miller's actions in shooting Apollo and thereby causing the Plaintiff insufferable and egregious harm, and will result in more unnecessary bloodshed if corrective measures aren't taken by the City of Buffalo and the City of Buffalo Police Department.

  g. The policymaker, namely Defendant Wright, would know 'to a moral certainty' that his employees will confront a given situation, namely encountering canines during the course of Police business. The situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation, as is shown above. Further, it is clear that the wrong choice by the City employee will frequently cause the deprivation of a citizen's constitutional rights. <u>Cerbelli v. City of New York</u>, 2008 U.S. Dist. LEXIS 109341, 99 CV 6846, (E.D.N.Y, 2008).

48. Such inaction is the textbook definition of deliberate indifference. Plaintiff has pled as much and can recover on such a theory under <u>Monell</u>.

49. The above-referenced misuse of authority and power by said Defendants named in this cause of action was egregious and shocking to the conscience. As a result, the Plaintiff was caused and will continue to undergo and endure severe mental anguish, hardship, and distress as a result thereof.

50. Such deprivations of Plaintiff's property rights and right to liberty and happiness were in violation of the rights secured to citizens by the Fourth Amendment of the United States Constitution and by Title 42 U.S.C. § 1983.

51. As a result of the above-referenced Defendant's deprivation of Plaintiff's civil and Constitutional rights, Plaintiff has been damaged in an amount to be determined at trial.

52. Plaintiff demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

### Punitive Damages against Defendant Officer William Miller and Defendant former Commissioner Alphonso Wright, in their Individual Capacities

53. Plaintiff Luis Angel Arroyo Acosta incorporates by reference all of the allegations set forth herein in this Complaint as if fully set forth herein.

54. Defendant Officer Miller and Defendant former Commissioner Wright, in their individual capacities, were deliberately indifferent to Plaintiff's Constitutional rights, and exhibited such indifference and malice by their above-referenced actions throughout this horrific ordeal as sustained by Plaintiff.

55. Punitive damages are justified against the above-stated Defendants for their deliberate indifference and malice towards the Plaintiff herein.

56. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable seizure of his property;
   b. Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process; and
   c. Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience and anxiety.

**WHEREFORE**, Plaintiff demand judgment on the above counts against the Defendants, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts:

   a. Compensatory damages in favor of the Plaintiff in an amount to be determined by a jury;
   b. Exemplary damages in favor of the Plaintiff;
   c. Costs of this action, including reasonable attorney fees to the Plaintiff Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and,

       d. Punitive damages as stated above;

       e. Such other relief as the court may deem appropriate.

DATED:    November 28, 2025
                Darien Center, New York

                                        */s/ Matthew Albert, Esq.*
                                        The Law Offices of Matthew Albert Esq.
                                        2166 Church Rd.
                                        Darien Center, New York 14040
                                        mattalbertlaw@gmail.com
                                        Office: (716) 445-4119
                                        Fax: (716) 608-1388